# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DERRICK S., | No. CV 18-6554-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.

## PROCEEDINGS

Plaintiff[1] filed this action on July 30, 2018, seeking review of the Commissioner's[2] denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on August 21,

---

[1]    In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2]    Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the Defendant herein.

2018, and September 4, 2018.  Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on April 18, 2019, that addresses their positions concerning the disputed issue in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1959.  [Administrative Record ("AR") at 22, 193, 197.]  He has past relevant work experience as an insurance sales agent.  [AR at 22, 54-55.]

On May 30, 2014, plaintiff filed an application for SSI payments, and on July 3, 2014, he filed an application for a period of disability and DIB, alleging in both that he has been unable to work since June 10, 2003.  [AR at 15; see AR at 193-96, 197-202.]  After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 15, 135-37.]  A hearing was held on April 27, 2017, at which time plaintiff appeared represented by an attorney, and testified on his own behalf.  [AR at 15, 33-58.]  A vocational expert ("VE") also testified.  [AR at 54-56.]  On May 12, 2017, the ALJ issued a decision concluding that plaintiff was not under a disability from June 10, 2003, the alleged onset date, through May 12, 2017, the date of the decision.  [AR at 15-24.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 190.]  When the Appeals Council denied plaintiff's request for review on June 1, 2018 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

1  468 F.3d at 1114.  If the claimant is not currently engaged in substantial gainful activity, the

2  second step requires the Commissioner to determine whether the claimant has a "severe"

3  impairment or combination of impairments significantly limiting his ability to do basic work

4  activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has

5  a "severe" impairment or combination of impairments, the third step requires the Commissioner

6  to determine whether the impairment or combination of impairments meets or equals an

7  impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P,

8  appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the

9  claimant's impairment or combination of impairments does not meet or equal an impairment in the

10  Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient

11  "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the

12  claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past

13  relevant work.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  If the claimant meets

14  this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears

15  the burden of establishing that the claimant is not disabled because there is other work existing

16  in "significant numbers" in the national or regional economy the claimant can do, either (1) by

17  the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part

18  404, subpart P, appendix 2.  Lounsbury, 468 F.3d at 1114.  The determination of this issue

19  comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920;

20  Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

21

22  **B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

23        At the outset, the ALJ found that plaintiff's medical record included "no medical records prior

24  to [plaintiff's] date last insured,"[3] and he had no severe impairments prior to his date last insured

25  and, therefore, he "was . . . not disabled" prior to that date.  [AR at 17.]  The ALJ thus denied

26

27  ─────────────────────

28        [3]   The ALJ concluded that plaintiff met the insured status requirements of the Social
Security Act through December 31, 2007.  [AR at 17.]

plaintiff's application for DIB.  [Id.]  Addressing only plaintiff's SSI application, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since May 30, 2014, plaintiff's protective filing date.  [AR at 18.]  At step two, the ALJ concluded that plaintiff has the severe impairments of lumbar degenerative disc disease; status post colostomy and hernia repair; and hypertension.  [Id.]  The ALJ also concluded that plaintiff had no more than mild mental limitations.  [Id.]  At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing.  [AR at 19.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c),[5] "but is limited to no more than frequently fingering, grasping, feeling, or overhead reaching."  [Id.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as an insurance sales agent.  [AR at 22, 54-55.]  The ALJ made an alternative finding at step five that there are other jobs existing in the national economy that plaintiff is also able to perform, including work as a "laundry worker" (Dictionary of Occupational Titles ("DOT") No. 361.684-014), as a "machine feeder" (DOT No. 699.686-010), and as an "industrial sweeper" (DOT No. 389.683-010).  [AR at 23, 55-56.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of June 10, 2003, through May 12, 2017, the date of the decision.  [AR at 23-24.]

/

/

---

[4]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5]    "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 416.967(c).

# V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he rejected the opinion of plaintiff's examining physician, Lanita Barnes, Psy.D., and found no severe mental health impairments. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

## A.    THE ALJ'S STEP TWO FINDING

### 1.    Legal Standard

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months.  Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508 (effective through March 26, 2017), 404.1509, 404.1520(a)(4)(ii); see generally Bowen v. Yuckert, 482 U.S. 137, 148, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment").  This must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508 (effective through March 26, 2017).  The Commissioner's regulations define "symptoms" as a claimant's own description of his physical or mental impairment.  20 C.F.R. § 404.1528 (effective through March 26, 2017). "Signs," by contrast, "are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements . . . [,] [and] must be shown by medically acceptable clinical diagnostic techniques."  Id.  Finally, "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques."  Id.  A claimant's statements about an impairment (i.e., "symptoms") "are not enough [by themselves] to establish that there is a physical or mental impairment."  Id.

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  A "severe" impairment, or combination of

impairments, is defined as one that significantly limits physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520.  An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities.  Yuckert, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "de minimis" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); see also 20 C.F.R. § 404.1521(a).  "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ."  20 C.F.R. § 404.1521(b).  It also includes mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations.  See SSR 85-28.

When reviewing an ALJ's findings at step two, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments."  Webb, 433 F.3d at 687 (citing Yuckert, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

### 2.    Analysis

On August 23, 2014, Dr. Barnes performed a comprehensive psychological evaluation of plaintiff at the request of the Social Security Administration.  [AR at 18, 326-31; JS at 5.]  Plaintiff's chief complaint at the evaluation was depression.  [AR at 326.]  He reported that his mother died without leaving a will, and that changes in his economic status resulted in him going from a "'nice middle class life to living below poverty.'"  [Id.]  Dr. Barnes noted that there were no psychological records for her to review and that plaintiff was taking no psychotropic medication because he didn't "like the way it [made] [him] feel."  [AR at 326-27.]    She reported that while plaintiff reported no

history of prior psychiatric or mental health treatment, he did report that he has been using medical marijuana since 2006 and that he consumed up to twelve beers daily.  [AR at 327-28.]  She also reported that when asked if he had consumed beer the morning of the evaluation, plaintiff responded that he "always start[s] with a couple after breakfast."  [AR at 328.]  Dr. Barnes observed that "although [plaintiff] admitted drinking a few beers prior to his appointment, he did not appear to be under the influence of alcohol or drugs."  [Id.]  She described plaintiff as cooperative, but appearing agitated and frustrated. [Id.] She also noted that he sometimes spoke quickly.  [Id.] Dr. Barnes described plaintiff's mood as "irritated" and "frustrated" with his present condition, and described plaintiff's speech as "pressured" when he was expressing his agitation, frustration, and hostility.  [AR at 328, 330.]

Dr. Barnes diagnosed plaintiff with an adjustment disorder, not otherwise specified, and mood disorder due to his general medical condition of lower back pain/sciatica.  [AR at 330.]  She also assessed a Global Assessment of Functioning ("GAF")[6] score of 65, indicative of "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV 34. Dr. Barnes noted that along with adjustment disorder and mood disorder, plaintiff would "likely not improve over the next 12 months, as his mood is concurrent with environmental, medical, and lifestyle conditions, to which he is making a poor adjustment."  [AR at 330.]  She found that plaintiff was "moderately impaired in his ability to relate to and interact with others, including coworkers and the public, due to pressured speech and agitation," and while he was "not significantly impaired in his ability to maintain attention and concentration and perform intellectually," he was nevertheless "mildly to moderately impaired in his ability to attend to day-to-day work-related

---

[6]    A GAF score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV").  The most recent edition of the DSM "dropped" the GAF scale, citing its "conceptual lack of clarity" and "questionable psychometrics in routine practice."  Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012).

activity and perform consistently with others in a cooperative environment." [AR at 330-31.]

The ALJ found that Dr. Barnes' diagnoses of adjustment disorder and mood disorder conflicted with the "mostly normal mental status examination results." [AR at 18.] He also noted that Dr. Barnes' opinions that plaintiff had moderate impairment in his ability to interact with others, and mild to moderate limitation in attending to his daily activities, were inconsistent with her assessed GAF score of 65, "which suggests no more than mild findings, as well as [his] lack of mental health treatment." [Id.] The ALJ also found that plaintiff's "presentation may have been affected by his alcohol consumption prior to the examination." [Id.] The ALJ ultimately gave Dr. Barnes' assessment "little weight" because "the available evidence and treatment does not support more than mild mental limitations." [Id.]

Plaintiff contends that the ALJ erred when he rejected Dr. Barnes' opinions and found a non-severe mental impairment "without articulating any legally sufficient rationale." [JS at 4, 8 (citing AR at 18).] He argues that "[t]he ALJ's sole articulation to reject Dr. Barnes' opinion is that [plaintiff] lacked mental health treatment." [JS at 9.] Plaintiff also contends that the ALJ erred in concluding "that Plaintiff's clinical presentation may have been affected by alcohol use." [JS at 9; AR at 18.]

Defendant responds that the ALJ properly found that plaintiff's depression was non-severe because "failure to seek or receive mental health treatment after July 2014 significantly undermines his contention that the impairment constituted a severe impairment." [JS at 13.] Defendant also refers to plaintiff's hearing testimony where he reported that he had been "a little depressed" after his mother's death. [JS at 13 (citing AR at 53).] Defendant asserts -- as did the ALJ -- that Dr. Barnes' assessment was internally inconsistent because her assessment of moderate mental limitations conflicted with her assessed GAF score of 65, which indicated only mild symptoms. [JS at 15.]

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are

supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). Here, the ALJ gave Dr. Barnes' assessment little weight, based on the GAF score that Dr. Barnes assigned and plaintiff's "lack of mental health treatment." [AR at 18.] However, "[t]he Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.'" McFarland v. Astrue, 288 F. App'x 357 (9th Cir. 2008) (citing 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000)). While a GAF score can be a useful tool provided by a medical source, it is not a finding that is controlling and thus by itself does not satisfy the "clear and convincing" standard for rejecting the uncontradicted opinion of an examining physician.[7] Lester, 81 F.3d at 830-831.

The ALJ also relied on plaintiff's lack of mental health treatment to discredit both Dr. Barnes' findings and those of the state agency medical consultant in concluding that plaintiff had only a mild mental impairment. [AR at 18; 63-64.] But "not seek[ing] treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a doctor's] assessment of claimant's condition is inaccurate." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). It is improper for an ALJ to "reject[] claimant's assertions about his depression" for failing to seek psychiatric treatment. Id. "'[Claimant] may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgement in seeking rehabilitation.'" Id. (citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)). This reason also fails to satisfy the "clear and convincing" standard. Lester, 81 F.3d at 830-831.

Similarly, the ALJ rejected Dr. Barnes' assessment that plaintiff, while having admitted to having consumed "a couple" of beers prior to his evaluation, did not appear under the influence. Instead, the ALJ discredited both plaintiff's credibility and Dr. Barnes' assessment. "[A]n ALJ does

---

[7] The February 7, 2015, opinion of Preston Davis, Psy. D., who provided the state agency review of Medically Determinable Impairments and Severity, is consistent with Dr. Barnes' opinion in finding plaintiff's affective disorder severe. [AR at 96-97.] Even if the opinion of Dr. Barnes had been contradicted, and the parties point to no such evidence, the ALJ's reasoning failed to meet the even lower threshold of specific and legitimate reasons supported by substantial evidence for rejecting Dr. Barnes' assessment of plaintiff's mental health.

not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports [her] ultimate opinion with [her] own observations." Ryan, 528 F.3d at 1199-1200. Here, the ALJ asserted that plaintiff's consumption of alcohol may have impacted the evaluation, despite Dr. Barnes -- who was present at the relevant time and could observe plaintiff's behavior -- clearly finding that plaintiff "did not appear to be under the influence of alcohol or drugs." [JS at 328.] The ALJ failed to provide any reason for rejecting Dr. Barnes' evaluation on this matter and, based on sheer speculation, improperly discredited plaintiff's testimony where the examining physician did not.

The ALJ failed to provide clear and convincing reasons, let alone specific and legitimate reasons supported by substantial evidence, for rejecting Dr. Barnes' assessment of plaintiff's mental health.

**B.     CONCLUSION**

Under the circumstances here, the ALJ's reliance on plaintiff's GAF score and his lack of mental health treatment to reject Dr. Barnes' functional assessment and conclude that plaintiff did not have a medically severe mental health impairment at step two was not supported by substantial evidence.

Remand is warranted on this issue.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly

evaluated, remand is appropriate.  See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made.  In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First, because the ALJ failed at step two to provide legally sufficient reasons for discounting the opinions of Dr. Barnes regarding plaintiff's mental impairments, the ALJ on remand shall reassess the mental health opinions of record, including the opinions of Dr. Barnes.  The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects.  Second, if found to be severe, the ALJ must determine whether plaintiff's mental health impairment or the combination of all of plaintiff's impairments meet or equals an impairment in the Listing.  Third, if warranted, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing his past relevant work as an insurance sales agent. Finally, if plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

/

/

/

/

/

/

/

/

/

/

/

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  July 25, 2019

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE